FANNY SEARLES GRADLE

*v.*

CHARLES WARNER.

*Filed at Ottawa January 18, 1892.*

1. LEASE—*forfeiture for non-payment of rent.* A lease provided for the payment of $62.50 rent, semi-annually, on the first days of May and November in éach year, and gave the lessor the right to declare the term ended if default should be made in the payment of rent. The rent falling due November 1, 1890, remaining unpaid, the lessor, on December 4, 1890, notified the lessee that the rent due must be paid on or before January 1, 1891. On January 3 the lessee offered the lessor a check for $50, the rent then due being only $47.70, but being unable to make the change, the lessor told the lessee's agent to hold the check, and that he would call and get it: *Held,* that the facts failed to show any declaration of forfeiture of the lease up to January 4, 1891.

2. SAME—*forfeiture, how declared—how waived.* Notwithstanding a lease may provide that if the rent shall be unpaid on the day fixed, or default shall be made in any of its covenants, the lessor may declare the term ended, still he may waive such provision, and until some act is done to manifest an intention to declare a forfeiture, it will be presumed that the lessor has waived the right. Although a lessor declaring a forfeiture may not be required to give notice of his election so to do, he must do some act manifesting an intention to terminate the lease, and until such act is done the lease will remain in full force. After an offer to pay the rent, it is too late to declare a forfeiture.

3. TENDER—*offer of certificate of deposit.* The tender of a certificate of deposit of $50 in payment of $47.70 of rent due, if not objected to at the time on some proper ground, will be sufficient to prevent the lessor from declaring a forfeiture of the term for non-payment of rent.

4. SAME—*objections to character of tender—waived if not made specific.* Where a certificate of deposit or a bank check may be offered in payment of a debt, and the creditor fails to make any objection on that account, the objection will be regarded as waived. If the creditor has any objection to the certificate of deposit on the ground it is a little in excess of the debt and requires the making of change, or because lawful money is not offered, it will be his duty to make the specific objection, so that it may be obviated.

5. LEASE WITH PRIVILEGE TO LESSEE TO PURCHASE—*what constitutes, acceptance of the privilege.* A lease for a term of years contained a clause that during the term the lessee should have the privilege of

purchasing the premises from the lessor for the sum of $2500, to be paid in cash upon the delivery of a warranty deed. Before any forfeiture of the lease the lessee tendered to the lessor a certificate of deposit for $2500, indorsed in blank, to which no objection was made, and a warranty deed for execution : *Held*, that the acts of the lessee were a sufficient acceptance of the offer of sale, and constituted a binding contract.

6. CONTRACT OF SALE—*by married woman—whether requires husband to join in deed.* The proposition of a lessor, who is a married woman, to her lessee, giving him the privilege of purchasing the premises of the lessor for a given sum, to be paid on the delivery of a warranty deed, when accepted by the lessee does not require the lessor's husband to execute the deed for the land. The fact that the lessee in such case hands to the lessor for execution a deed containing her name and that of her husband as grantors, does not necessarily imply that the lessee demands a deed in which the husband shall join.

7. CONTRACT—*acceptance of proposition.* The acceptance of a proposition of sale must be a simple acceptance, according to the terms of the offer. The offer of a bargain by one person to another imposes no obligation upon the former until it is accepted by the latter, according to the terms in which the offer was made.

8. STATUTE OF FRAUDS—*signature of party charged is sufficient to avoid.* An offer or proposition for the sale of real estate, if signed by the party to be charged, though not accepted in writing, if accepted without varying the terms, of which due notice is given, will take the contract out of the Statute of Frauds.

APPEAL from the Circuit Court of Lake county; the Hon. C. W. UPTON, Judge, presiding.

This was a bill for specific performance, brought by Charles Warner, against Fanny Searles Gradle, to enforce an alleged agreement contained in a lease for the conveyance of certain property situated in the city of Waukegan, in Lake county. The lease executed by the parties, and set out in the bill, so far as its contents are material to a decision of the case, is as follows :

"Indenture, dated October 3, 1886, between Fanny Searles Gradle, the party of the first part, and Charles Warner, party of the second part: Said first party, in consideration of the covenants and agreements herein mentioned, to be kept and performed by said party of the second part, has demised and

leased to the said party of the second part the premises in question from April 1, 1887, for and during and until April 1, 1892. And the said party of the second part, in consideration of the leasing of the said premises, covenants and agrees to pay said first party, as rent for said premises, at the office of Dr. Henry Gradle, in Chicago, the sum of $125 for each and every year during the said term, payable in installments of $62.50 on the first days of May and November of each year.

"It is agreed between said parties, that during the continuance of this lease said lessee shall have the privilege of purchasing said premises from the lessor for the sum of $2500, to be paid in cash upon the delivery of a warranty deed. It is further agreed, that during the continuance of this lease said lessor shall have the privilege of selling said premises to any person other than the said lessee, and upon sale this lease shall be ended: *Provided, however*, that before making said sale the lessor shall give unto the said lessee five days' notice of her intention so to do, and during said term shall have the option to purchase said premises from said lessor for the same price as such third party is willing to pay for the same; but should lessee not exercise said option, the said lessor shall sell said premises to said third party.

"It is expressly understood and agreed by and between the parties aforesaid, that if the rent above reserved, or any part thereof, shall be behind or unpaid on the day of payment whereon it ought to be paid as aforesaid, or if default shall be made in any of the covenants herein contained to be kept by the party of the second part, it shall or may be lawful for the party of the first part, her heirs, executors, administrators, attorneys or assigns, at her request, to declare said term ended. And the said party of the second part hereby waives his right to any notice from said party of the first part of her election to declare this lease at an end under any of its provisions, or any demand for the payment of rent or the possession of the premises leased herein, but the simple fact of the non-payment

of the rent reserved shall constitute a forcible detainer, as aforesaid."

It is alleged in the bill that complainant entered into possession of the premises under the lease, and that he has performed all the covenants of the lease. It is also alleged that on January 3, 1891, complainant applied to Mrs. Gradle and offered to pay her $2500 on the terms of said written agreement, upon her delivery to him of a warranty deed for said premises, and that she refused and still refuses to comply with the agreement.

The answer of defendant denies that complainant has performed the covenants of the lease; denies that complainant offered to pay $2500 on delivery to him of a warranty deed, on January 3, 1891. The defendant sets up that on January 1, 1891, the lease was forfeited; that the rent of said premises falling due on November 1, 1890, was not paid by Warner, and that the sum of $47.70 remaining due and unpaid on or about December 1, 1890, she notified Warner that the amount remaining due and unpaid must be actually and positively paid on or before January 1, 1891, but that the amount so remaining due was not paid on or before the said last mentioned date; that on the 16th of January, 1891, she notified Warner of her election to forfeit said lease, and then and there demanded possession of said premises from Warner, which he then and there refused to surrender. It is also set up in the answer that Warner never accepted, in writing, the proposition to purchase contained in the lease; that the contract relied upon was not in writing, and the Statute of Frauds is set up.

Mr. A. M. PENCE, for the appellant:

By the non-payment of the rent on November 1, 1890, or at any time on or before January 1, 1891, the lease became forfeited, and the forfeiture could be taken advantage of by the lessor at her election, and without notice or demand of payment, and even after payment or tender of such rent.

At common law a party always had the right, by his agreement, to waive such requirements. 2 Wood. on Landlord and Tenant, p. 1039, sec. 449, note; *Fifty Associates* v. *Howland,* 5 Cush. 214; *Sweeney* v. *Garrett,* 2 Disney, 601; *Doe* v. *Masters,* 2 B. & C. 490; *Eichart* v. *Barges,* 12 B. Mon. 462; *Espen* v. *Hinchliffe,* 131 Ill. 468.

As to the right of forfeiture by mere non-payment of rent, see *Chadwick* v. *Parker,* 44 Ill. 326; *Leary* v. *Pattison,* 66 id. 203; *Chapman* v. *Kirby,* 49 id. 211; *Palm* v. *Railroad Co.* 18 id. 217; *Dobbins* v. *Higgins,* 78 id. 440.

The offer of the certificate of deposit in payment of the rent was not a legal tender, and especially the offer of a certificate of $50 with which to pay $47.70, with a demand for a return of the difference, is not a legal tender. 2 Greenleaf on Evidence, sec. 604; *Hubbard* v. *Bank,* 8 Cow. 101.

To constitute a waiver of a forfeiture there must be some positive, affirmative act. The acceptance of rent accrued before forfeiture is no waiver, much less would the tender of such rent be a waiver. *Clark* v. *Jones,* 1 Denio, 516; *Perry* v. *Davis,* 3 C. B. 769; *Blecker* v. *Smith,* 13 Wend. 531; *Price* v. *Worwood,* 4 H. & N. 512; *Jackson* v. *Allen,* 3 Cow. 120; *Stuyvesant* v. *Davis,* 9 Paige, 428; *Jones* v. *Carter,* 15 M. & W. 718; Wood on Landlord and Tenant, p. 1212, sec. 515.

Waiver is in the nature of an equitable estoppel, and depends upon some positive fact or representation upon which the other party has acted to his detriment. *Ripley* v. *Insurance Co.* 30 N. Y. 165; *Leopold* v. *Salkey,* 89 Ill. 424; *Stewart* v. *Manny,* 7 Bradw. 515.

This counter offer was no acceptance of the offer contained in the lease, and all the authorities show that such counter offer was a rejection of the offer contained in the lease. *Hyde* v. *Wrench,* 3 Beav. 334; *National Bank* v. *Hall,* 101 U. S. 43; *Fox* v. *Turner,* 1 Bradw. 153; *Smith* v. *Wetherell,* 4 id. 655; Anson on Contracts, (2d Am. ed.) *20; Langdell's Summary of Contracts, 23; *Cammeyer* v. *German Lutheran Church,* 2

Sandf. Ch. 208; 1 Parsons on Contracts, 477; 1 Sugden on Vendors, (8th Am. ed.) 133.

To comply with the Statute of Frauds, the contract, or some memorandum or note thereof, must be in writing, and signed by the party to be charged therewith.

The offer to sell during the continuance of the lease is not a contract. It first requires an acceptance. Hence, the offer subscribed by the lessor does not comply with the statute. There is no memorandum in writing of the acceptance signed by Mrs. Gradle, which is absolutely necessary to complete the contract. Fry on Specific Per. (3d ed.) sec. 270; *Warner* v. *Wellington,* 3 Drewry, 531; *Lanz* v. *McLaughlin,* 14 Minn. 75.

Messrs. COOK & UPTON, for the appellee:

The appellant is estopped by her conduct in declaring a forfeiture. A forfeiture will not be inferred because there were grounds for one and an intention to declare one, but all the requisite steps must be taken.

The law does not favor forfeitures, and will not imply them from slight circumstances. *Cheney* v. *Bonnell,* 58 Ill. 268.

Even though the right to declare a forfeiture existed, the contract was mutually binding on the parties until some act was done to declare the forfeiture. The appellant had no right to insist that the contract was forfeited or binding, as she might choose. *Moore* v. *Smith,* 24 Ill. 513.

Forfeitures are not regarded by the courts with any special favor, and when a party insists upon a forfeiture he must make clear proof and show he is entitled to it. It is a harsh way of terminating contracts, and he who insists upon making a declaration of forfeiture must be held strictly within the limits of the authority which gives the right. *Palmer* v. *Ford,* 70 Ill. 369.

The appellant's acts, as shown by the evidence, amounted to a waiver of a right to declare a forfeiture without notice. *Palmer* v. *Ford,* 70 Ill. 369.

Under the circumstances surrounding the dealings of the parties, the appellee was entitled to notice of forfeiture. *Thayer* v. *Mining Co.* 105 Ill. 540.

No written acceptance of the offer to purchase was necessary. *Farwell* v. *Lowther*, 18 Ill. 252; *Estes* v. *Furlong*, 59 id. 298; *Perkins* v. *Hadsell*, 50 id. 216; 1 Greenleaf on Evidence, sec. 268; *Clason* v. *Barley*, 14 Johns. 484; *McCrea* v. *Purmart*, 16 Went. 465; Chitty on Contracts, 70, and notes.

The obligations, covenants and promises of the parties as to the sale of the property are mutual or dependent. Concurrent acts are required of the parties.

In such a case no actual tender of money is required. All that need be shown is a readiness and willingness, accompanied with an ability, to pay, although in this case a tender was made. *Clark* v. *Weis*, 87 Ill. 439; *Mathison* v. *Wilson*, id. 51.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

It is first contended by appellant, that by the non-payment of rent on November 1, 1890, or on or before January 1, 1891, the time to which the payment of rent was extended, the lease became forfeited as against the lessee. The lease provides for the payment of $125 rent per annum, payable one-half on the 1st day of May, and one-half on the 1st day of November; but it is apparent from the manner in which the parties dealt with each other, payment was not exacted by the lessor or made by the lessee as provided by the terms of the lease. On the 4th day of December, 1890, the defendant wrote the complainant the following letter:

"CHICAGO, *December 4, 1890.*

"*Mr. Warner*—I send you a statement of accounts between us as they now stand. The straw you put in the barn was some of it quite damp, and it cost me a dollar to get the hay and straw pitched apart from each other after you got through with them. The corn stalks are frosted, and are worth very

little for our cow. We have always allowed you high prices for everything you have brought us, although we did not contract to take anything but money in payment of the rent. After this you will please pay the rent in money. The balance now due, $47.70, must be paid before January 1, 1891. We would also like to know if you wish to remain next year. If you do not, we will release you from the last year of the contract. It is quite likely we will sell the place before spring, as there are parties after it now."

The statement enclosed in the letter was as follows:

"CHICAGO, *December 1, 1890.*

"*Charles Warner, Dr., to H. Gradle:*

| | |
|---|---|
| Rent for 1890 - - - - - - - - - - - - - | $125 00 |

Received in part payment—

| | | |
|---|---|---|
| Oats, 44 bus., at 40c - - - - - - - - | $17 60 | |
| Oats, 58 bus., at 40c - - - - - - - - - | 23 20 | |
| Hay, 3500 wt., at $8 per ton - - - - - | 14 00 | |
| Hay, 2660 wt., at $8 per ton - - - - - | 10 50 | |
| Straw, 2310 wt., at $8 per ton - - - - | 8 00 | |
| Corn stalks, one load, at $4 - - - - - | 4 00 | |
| | | 77 30 |
| Balance due - - - - - - - - - - - - | | $47 70" |

From this letter and statement it is plain that there had been no forfeiture of the lease up to the time the letter was written, and by the terms of the letter the time of payment of the amount due was extended until January 1, 1891, and there is nothing in the letter to indicate an intent on the part of the lessor to insist on a forfeiture of the lease if the balance due on the rent was not paid as required in the letter. The complainant did not make payment on the 1st day of January, nor did the lessor manifest any disposition to declare a forfeiture of the lease, but on the 3d day of January the complainant called on the defendant, and after some little discussion in regard to an account which the defendant had rendered, the

parties came to an agreement as to the amount of rent due then. A certificate of deposit for $50 was produced, and handed to the defendant in payment of the rent due, but it turned out the defendant did not have the change to pay back the amount which the certificate exceeded the rent. She made an effort to get the change of another party in the house, but failing in this she directed Mr. Upton to keep the certificate, and she would come up to his office and get it. At this interview it was not pretended from any quarter that the lease was forfeited, but on the other hand it was conceded by the acts and conduct of both lessor and lessee that the lease was in full force.

The amount due on the rent was offered to the lessor, and she was willing to accept it, and only failed to do so because she was not able to make change. The willingness of the defendant to accept the rent, in connection with the fact that she in no manner intimated that she claimed a forfeiture, seems to be conclusive of the fact that the lease was in full force, and so regarded by the lessor. It is true that the lease provided that if the rent should be unpaid on the day of payment, or if default should be made in any of the covenants of the lease, it should or might be lawful for the party of the first part to declare said term ended. But the lessor had the right to waive this provision of the lease, and unless some act to manifest an intention on her part to declare a forfeiture was done, it will be presumed that she waived the right. This principle is fully sustained by *Moore* v. *Smith*, 24 Ill. 512, where it is held that a contract for the sale of land which provides for a forfeiture in case of non-payment of the purchase money is mutually binding on the parties, even after default in payment has been made, until the vendor has done some act to terminate the contract. It may be that the lessor was under no obligation to give the lessee any formal notice that she had elected to declare a forfeiture, but she was required to do some act to manifest an intention to declare a forfeiture, and until some

act manifesting such an intention was done, the lease would be in full force; and up to the time the complainant offered to pay all the rent then remaining due, the lessor had done nothing showing, or tending to show, an intention to declare a forfeiture of the lease.

But it is said the offer of the certificate of deposit was not a good tender of the amount due. Had the certificate of deposit been objected to and lawful money demanded at the time, the tender or offer of payment on a certificate of deposit would not be good. But where a certificate of deposit or a check may be offered in payment, and the payee fails to make any objection on that account, the objection will be regarded as waived. Here the money was in bank, and the certificate representing the money was offered to the lessor. If she had any objection to it because it called for $50 when the rent was only $47.70, and she would have to make change, or because the lawful money was not offered, it was her duty to make the objection at the time, so that complainant might be able to furnish lawful money in lieu of the certificate.

After the rent had been offered to the defendant, as heretofore stated, Mr. Upton, who was acting for the complainant, then produced a certificate of deposit for $2500, issued by the First National Bank of Waukegan, payable to the order of Charles Whitney, and indorsed in blank by him, and offered the same to defendant in payment for the land described in the lease. A deed from defendant and her husband to Charles Warner, the complainant, conveying the premises, was also produced and handed the defendant for execution. The defendant stated, in substance, that she was not prepared to act in that matter in the absence of her husband, and Upton replied, "that was all right." Defendant kept the deed, remarking she would let him know in the course of a week what she would do in regard to it. It is contended by defendant that what was done did not constitute an acceptance of that clause in the lease which gave complainant the privilege of buying

the premises. It will be remembered that the sale clause in the lease provided that during the continuance of the lease the lessee should have the privilege of purchasing the premises from the lessor for the sum of $2500, to be paid in cash upon the delivery of a warranty deed. As has been heretofore seen, the lease was not forfeited. The offer of acceptance was therefore made during the continuance of the lease. The amount specified to be paid was offered to the lessor. It is true that a certificate of deposit was offered, instead of money which circulates as a legal tender, but as no objection was made upon the ground that the certificate of deposit was not a legal tender, the objection was waived.

But it is said the acceptance of the lessee was variant from the terms of the contract, and hence was a rejection of the offer of sale contained in the lease. We think the law is well settled that the acceptance of a proposition of sale like the one involved must be a simple acceptance, according to the terms of the offer. As said in *Eleason* v. *Henshaw,* 4 Whart. 225: "An offer of a bargain by one person to another imposes no obligation upon the former until it is accepted by the latter according to the terms in which the offer was made." See, also, 1 Sugden on Vendors, 117; *Farwell* v. *Lowther,* 18 Ill. 255.

But did the acceptance, here, vary from the offer? We think not. The supposed variance of the acceptance of the proposition of sale consisted in the fact that the deed presented by the lessee to the lessor for execution contained the names of the lessor and her husband, as grantors, while the husband had not executed the contract or proposition of sale, and was not a party thereto. As the husband had not executed the contract he could not be compelled to join with his wife in the execution of a deed. But conceding that the husband could not be compelled to join with his wife in the execution of the deed, that fact did not release the wife from conveying by deed executed as required by the contract.

The question then recurs, what obligation rested on the wife by the terms of the contract. That must be determined by the terms of the contract itself. Referring to the contract, it provides: "Said lessee shall have the privilege of purchasing said premises from the lessor for the sum of $2500, to be paid in cash upon the delivery of a warranty deed." The contract to convey by warranty deed will admit of but one construction,— that is, she covenanted to convey a perfect title. This construction of the language of the contract is well sustained by the authorities. *Brown* v. *Cannon*, 5 Gilm. 174; *Morgan* v. *Smith*, 11 Ill. 199; Rawle on Covenants for Title, 41, and cases cited in note.

Under our statute, the husband of the lessor had dower rights in the property owned by her, and in order to convey a perfect title to the property it was necessary for him to join in the deed releasing his dower rights. If we are correct in this, it is plain that the deed which the lessee delivered to the lessor for execution conformed to the contract, and his acceptance of the proposition to sell was in harmony with the terms and conditions of the agreement executed by the contracting parties. All that the lessee required was such a deed or conveyance as the contract called for. This is apparent from what occurred on the 19th day of January, 1891, when a second demand was made for a deed, as appears from the evidence of Mr. Whitney, who testified as follows: "On the 19th day of January last I went with Mr. Warner to the city of Chicago, to Mrs. Gradle's residence, and at her residence I saw her, Mr. Warner being present, and on that occasion I had this bill for rent, (which is now offered in evidence, bill of $47.70,) and I told Mrs. Gradle that I was there to offer the rent according to that statement, and I offered her $47.70 in currency. On the same occasion I had $2500 in currency, (greenbacks,) which I offered her as a tender for $2500 under the contract of purchase mentioned in said lease, stating to her that I came there to do the business for Mr. Warner at his request, he not

being very familiar with such matters, and told her that for the $2500 Mr. Warner desired a warranty deed of the premises mentioned in the lease, according to the contract."

But it is said this tender and offer of acceptance came too late, as the lessor, on January 16,—three days before,—declared a forfeiture of the contract, and demanded possession of the premises. The answer, however, to this, is the fact that on January 16 the lessee was in no default, and the lessor had no authority whatever to declare a forfeiture. Her attempt to do so was fruitless.

The Statute of Frauds is also relied upon by the defendant. In *Farwell* v. *Lowther*, 18 Ill. 252, it was held that a contract or proposition for the sale of real estate, if signed by the party to be charged, though not accepted in writing, if accepted without varying the terms, of which due notice is given, will take the case out of the Statute of Frauds. This case, and the authorities cited in the opinion, seem to settle the question. See, also, *Estes* v. *Furlong*, 59 Ill. 298; *Esmay* v. *Graton*, 18 id. 486; *Perkins* v. *Hadsell*, 50 id. 217.

We think the decree sustained by the evidence, and it will be affirmed.

*Decree affirmed.*