HENRY MARETZ, TRUSTEE *v.* JOY APUZZO

APPELLATE SESSION OF THE SUPERIOR COURT

FILE NO. 293

Argued November 10, 1976—decided January 7, 1977

*Thomas N. Wies,* for the appellant (defendant).

*Ronald J. Fracasse,* for the appellee (plaintiff).

DAVID M. SHEA, J.  The defendant has appealed from a judgment in a summary process action granting possession of the leased premises to the plaintiff for nonpayment of rent. The defendant has abandoned any attempt to correct the finding. The claim of error is limited to the sustaining of a demurrer to three special defenses raised in the answer.[1]

---

[1] Five special defenses were pleaded. The fifth special defense was withdrawn before trial. The assignment of errors with respect to sustaining the demurrer to the fourth special defense was not briefed and was expressly abandoned during argument.

The complaint alleged that the plaintiff leased an apartment to the defendant on a month-to-month basis at a certain rental payable in advance on the first day of each month. It alleged further that the defendant failed to pay the rent which fell due on September 1, 1975, and that on September 12, 1975, a notice to quit possession was served ordering the defendant to vacate the premises on or before September 22, 1975, which she neglected to do.

The first special defense alleged that on or about July 29, 1975, the defendant in good faith had requested the plaintiff to make some repairs and that the action was accordingly barred by General Statutes § 19-375a (a) (Rev. to 1975),[2] which provides that a tenant may not be evicted within six months after having made such a request. The demurrer to this special defense claimed that the statute was inapplicable because the complaint relied wholly upon the failure of the defendant to pay the rent. Section 19-375a (b) (Rev. to 1975) provides that the defense of retaliatory eviction created by § 19-375a (a) is unavailable if "(1) [t]he tenant is using the dwelling unit for an illegal purpose or for a purpose which is in violation of the rental agreement or for nonpayment of rent . . . ." The defendant contends that the words "using the dwelling unit . . . for nonpayment of rent" imply that the nonpayment must be wilful in the sense that the tenant must be found to be attempting to "defraud the landlord of his due." Although the awkward phraseology of the statute raises some question of interpretation, we must reject the far-fetched construction advanced by the defendant and

[2] Section 19-375a (Rev. to 1975) provides, in pertinent part, that: "(a) No landlord shall maintain an action or proceeding against a tenant to recover possession of a dwelling unit, demand an increase in rent from the tenant, or decrease the services to which the tenant has been entitled within six months after: . . . (3) the tenant has in good faith requested the landlord to make repairs."

adopt the view that the legislative intention, however badly expressed, was to make the defense created by § 19-375a (a) unavailable in a summary process action for nonpayment of rent.

.In her second special defense the defendant raised the defense of retaliatory eviction created by General Statutes § 52-540a (Rev. to 1975), "that the plaintiff brought such action solely because the defendant attempted to remedy, by lawful means, . . . any condition constituting a violation of . . . any . . . state statute or regulation, or of the housing or health ordinances of the municipality wherein the premises which are the subject of the complaint lie." The demurrer claims that the statute is inapplicable to a summary process action for nonpayment of rent by virtue of its concluding sentence: "The obligation on the part of the defendant to pay rent or the reasonable value of the use and occupancy of the premises which are the subject of any such action shall not be abrogated or diminished by any provision of this section." The statute does not expressly state that the retaliatory eviction defense created therein is not available where the ground for eviction is nonpayment of rent. Any different consequence, however, would in a practical sense effectuate an abrogation or diminution of the obligation of the tenant to pay the rent. If the tenant were able to withhold the rent, even though remaining liable therefor, without subjecting himself to the consequence of an eviction for nonpayment, some modification of his obligation to pay the rent would result contrary to the intention of the statute.

In the third special defense the defendant claims that the plaintiff failed to make a demand for the September rent before serving the notice to quit. She relies on the common-law rule that a demand for the rent is essential before the landlord may

declare a forfeiture of the lease. *Kovner* v. *Dubin,* 104 Conn. 112, 119; *Camp* v. *Scott,* 47 Conn. 366, 374; *Bowman* v. *Foot,* 29 Conn. 331, 341; 49 Am. Jur. 2d, Landlord and Tenant, § 1034. The enactment in 1885 of the predecessor[3] to General Statutes § 47-23 (Rev. to 1975) eliminated the necessity of any such demand for a parol lease of real estate where the rent is payable periodically. Section 47-23 provides that if "such rent remains due and unpaid for a period of more than nine days, such lease shall terminate at the option of the lessor and on notice thereof to the lessee."[4] Nonpayment of the rent does not, in itself, terminate the lease but gives the landlord the option to terminate the lease by some unequivocal act clearly showing the exercise of that option. *Mayron's Bake Shops, Inc.* v. *Arrow Stores, Inc.,* 149 Conn. 149, 156. The demurrer to the third special defense was properly sustained.

There is no error.

In this opinion PARSKEY and SPONZO, Js., concurred.

---

[3] Public Acts 1885, c. 35, provides: "Whenever, by the terms of a parol lease of real estate, rent is agreed to be paid at stated periods, and such rent shall be and remain due and unpaid for a period of more than nine days, such lease shall at the option of the lessor and on notice thereof to the lessee expire and terminate."

[4] Minor changes in the wording of the 1885 enactment have left § 47-23 in its present form as quoted. We attribute no significance to those changes insofar as the present case is concerned.